UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LAZARUS,

        Plaintiff,                      Case No. 1:12-cv-1279

v.                                                Honorable Robert J. Jonker

UNKNOWN ABILITTIF et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Robert Lazarus is incarcerated at the Gus Harrison Correctional Facility, though the events giving rise to the complaint occurred while he was incarcerated at the Earnest C. Brooks Correctional Facility (LRF). He sues Dr. (unknown) Abilittif and Physician's Assistant (PA) (unknown) Spitters.

In his *pro se* complaint, Plaintiff alleges that he broke his left ankle on June 20, 2010, while playing a game of hacky sack. He was placed in a wheelchair and instructed not to put any weight on his ankle. An x-ray confirmed the break and surgery was scheduled. The hospital where Plaintiff was to receive surgery prescribed the pain medication Ultram[1] for seven days. Plaintiff alleges that he kited the healthcare unit (HC) and informed them that Ultram was "not effective enough." (Compl., docket #1, Page ID#2.)

On June 28, 2010, Plaintiff underwent surgery of his angle and the hospital prescribed "Narco"[2] for pain. (*Id.*) When Plaintiff returned to LRF, however, he was given Ultram, which he received until July 7, 2010. Plaintiff was then given acetaminophen for pain. After he sent a kite to HC complaining about "severe pain," however, his prescription for Ultram was restored and he received it from July 9 to July 12, 2010. (*Id.* at Page ID#3.)

On July 13, 2010, Plaintiff went to the surgeon's office, where his staples were removed and his foot was placed in a walking boot. Plaintiff asked the surgeon, Dr. Jeffrey Anhalt, to renew his prescription for Ultram. Dr. Anhalt wrote a 20-day prescription for Ultram, but Plaintiff

---

[1]Ultram (tramadol) is a non-narcotic pain reliever. *See* http://www.drugs.com/ultram.html (visited Mar. 4, 2013).

[2]Norco is a combination of acetaminophen and hydrocodone, an opioid pain reliever. *See* http://www.drugs.com/norco.html (visited Mar. 4, 2013).

received the Ultram for only six more days. Dr. Anhalt also requested that Plaintiff return to his office in 30 days to verify that Plaintiff's muscle had sufficiently recovered to remove the boot. Instead, healthcare staff at LRF removed the boot without an examination.

Plaintiff asserts that Defendants were aware that Plaintiff was in severe pain, as they received numerous medical requests from him complaining about their "failure to do anything to manage it." (*Id.*) In addition, a grievance filed by Plaintiff put Defendants "on notice" of his condition. (*Id.*) Thus, Plaintiff asserts that Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. According to Plaintiff, Defendants were more concerned about costs and the "potential that Plaintiff might abuse prescribed medication" than his pain. (*Id.*)

As relief, Plaintiff requests a declaratory judgment and damages.

## Discussion

### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff contends that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the

serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, mere differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Plaintiff apparently challenges Defendants' alleged failure to adequately treat pain stemming from his ankle injury. Applying the foregoing standards, Plaintiff has not stated a claim. The Court first notes that Defendants' role with respect to treating Plaintiff's condition is not clearly set forth in the complaint. Plaintiff does not expressly allege that Defendants were responsible for

his care or made any decisions regarding it. He merely asserts that they received unspecified medical requests describing "extreme pain," and that they "fail[ed] to do anything to manage it." (Compl., docket #1, Page ID#3.) However, Plaintiff clearly received substantial medical attention to his injury and pain from multiple individuals at LRF and an outside hospital; it not clear how Defendants were involved in the events alleged. In other words, Plaintiff's allegations hardly permit the Court to infer "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556); *see also Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Even assuming that Defendants were responsible for Plaintiff's care at all relevant times, and made all of the relevant decisions regarding his care while he was at LRF, Plaintiff does not state a claim against them. According to the complaint, after Plaintiff's injury, he received the prescription-strength pain medication Ultram, as recommended by the hospital where he was scheduled to have surgery. Plaintiff allegedly informed healthcare staff that Ultram was "not effective enough," but he does not allege that he was in significant pain at the time, much less that Defendants were aware of and deliberately ignored a serious need for additional care.

Plaintiff also alleges that he was given Ultram for his pain after his surgery, even though his surgeon had prescribed Norco. To the extent Plaintiff complains that he should have received Norco instead of Ultram, he alleges only a "difference[] of opinion among medical

personnel regarding a patient's appropriate treatment [that] do[es] not give rise to deliberate indifference." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996). As the court observed in *Douglas v. Stanwick*, 93 F. Supp. 2d 320 (W.D.N.Y. 2000):

> Not every physician will treat every ailment in exactly the same manner. That does not mean that one of the physicians must be acting with deliberate indifference to the patient's needs. That is particularly true when one of the physicians is more familiar with the jail or prison environment, and therefore more sensitive to the need to restrict narcotics use.

*Id.* at 325 (listing cases). Moreover, Plaintiff does not allege any reason why Ultram was not adequate for him after his surgery. Indeed, he specifically requested to be continued on Ultram at his follow-up appointment with Dr. Anhalt on July 13, 2010. Thus, the decision to prescribe Plaintiff Ultram, rather than Norco, does not give rise to an Eighth Amendment claim.

The only time Plaintiff alleges that he was in any significant pain is when he stopped receiving Ultram and was given acetaminophen on or around July 8, 2010. However, prison officials renewed his prescription for Ultram on July 9. Thus, rather than act with deliberate indifference to Plaintiff's complaints, healthcare staff responded to them.

Plaintiff also asserts that Dr. Anhalt prescribed Ultram for twenty days after Plaintiff's staples were removed, though LRF officials provided Ultram to Plaintiff for only six more days. Plaintiff does not contend that he experienced any significant pain after he was taken off of Ultram a second time, however, or that Defendants were aware of this pain and were deliberately indifferent to it.

Finally, Plaintiff alleges that prison staff did not follow Dr. Anhalt's recommendations when they removed Plaintiff's boot. However, Plaintiff alleges no significant consequences, or risk thereof, as a result of the foregoing conduct. *See Farmer*, 511 U.S. at 837

(requiring deliberate indifference to a "substantial risk of serious harm" to state a violation of the Eighth Amendment). Thus, the mere failure to follow Dr. Anhalt's recommendations also does not state a claim.

In short, Plaintiff fails to allege any significant consequences arising from the decision to prescribe him one form of prescription-strength pain medication over another before and after his surgery, or from the decision to remove his walking boot prior to a follow-up visit with his surgeon. Plaintiff's mere disagreement with the adequacy of the treatment that he received is not sufficient to state a claim. To the extent that Plaintiff complains about the severe pain that he experienced when he stopped receiving Ultram on or around July 8, 2010, his allegations demonstrate that prison officials were not deliberately indifferent to his complaints. Therefore, Plaintiff does not state a plausible claim to relief.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:     April 10, 2013          /s/ Robert J. Jonker
                                                              ROBERT J. JONKER
                                                              UNITED STATES DISTRICT JUDGE